NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

DOUGLAS BARRETT, et al., *Plaintiffs/Appellants*,

*v.*

LANDMARK CERAMICS UST, INC., et al., *Defendants/Appellees*.

No. 1 CA-CV 23-0635

FILED 10-31-2024

---

Appeal from the Superior Court in Maricopa County
No. CV2022-007755
The Honorable Connie Contes, Judge, *Retired*
The Honorable John L. Blanchard, Judge

**AFFIRMED**

---

COUNSEL

Carmen Chenal Horne Law Firm PLLC, Phoenix
By Carmen Chenal Horne
*Counsel for Plaintiffs/Appellants*

Quarles & Brady LLP, Phoenix
By Benjamin C. Nielsen, Alexander H. Park
*Counsel for Defendant/Appellee Monterrey Tile AZ, LLC,*
*Pro Source Wholesale, P.S., Phoenix, Inc. and P.S. of Phoenix, Inc.*

Davis Miles McGuire Gardner, PLLC, Tempe
By David W. Williams
*Counsel for Defendant/Appellee Landmark Ceramics-UST, Inc.*

---

**MEMORANDUM DECISION**

---

Judge D. Steven Williams delivered the Court's decision, in which Presiding Judge Daniel J. Kiley and Judge Kent E. Cattani joined.

---

**W I L L I A M S**, Judge:

¶1        Douglas and Lori Barrett appeal from the superior court's dismissal of their complaint to compel arbitration. We affirm on the basis that the mediation settlement agreement does not require arbitration before a final settlement agreement has been reached. We reject, however, the superior court's alternative reasoning that the question of whether the parties' mediation settlement agreement is enforceable is precluded by previous litigation.

**FACTUAL AND PROCEDURAL BACKGROUND**

¶2        In 2019, the Barretts sued manufacturer Landmark Ceramics-UST, Inc., distributor Monterrey Tile AZ, LLC, wholesaler ProSource Wholesale, P.S. of Phoenix, Inc., and P.S. of Phoenix, Inc. (collectively, "the Defendants") in Maricopa County Superior Court Case No. CV 2019-056939 (the "2019 case"), alleging breach of contract and negligent misrepresentation.[1] More than a year into the litigation, the superior court ordered the parties to participate in a settlement conference mediated by an appointed judge *pro tempore*. *Barrett v. Landmark Ceramics-UST, Inc.* ("*Barrett I*"), 1 CA-CV 22-0435, 2023 WL 142714, at *1, ¶ 2 (Ariz. App. Jan. 10, 2023) (mem. decision).

¶3        At the conclusion of the settlement conference, the parties signed a self-titled "Mediation Settlement Agreement" ("the mediation settlement agreement"), which outlined seven terms:

> 1. Plaintiffs and Defendants have reached this settlement at the Settlement Conference before [the judge *pro tempore*] on this date. By their signatures below, the parties affirm that they have agreed to the terms of this settlement,

---

[1]        This court may take judicial notice of prior legal actions involving the same parties. *Regan v. First Nat'l Bank*, 55 Ariz. 320, 327 (1940); *see also* Ariz. R. Evid. 201(b).

which includes resolution of Maricopa County Case No.
CV2019-056939 (the "Action").

2. In consideration of the resolution of the claims in the
[A]ction, Defendants collectively will:

    a. provide Plaintiffs with 3,200 square feet of
the same tile as at issue in the Action. Such
tile will be subject to inspection and
acceptance by Plaintiffs *on terms to be set forth
within the final operative settlement agreement*.

    b. pay Plaintiffs $57,000, contingent upon
Plaintiffs' acceptance of the tile.

3. Plaintiff[s] will take down the website relating to the
claims in the Action.

4. The parties will enter into mutual releases between
Plaintiffs, on the one hand, and Defendants, on the other.

5. Upon payment of the $57,000, Plaintiffs will dismiss the
lawsuit with prejudice, each party to bear its own fees and
costs.

6. Counsel for Defendants will draft the first draft of the
*operative settlement agreement* and stipulation to dismiss
with prejudice. Counsel for Defendants will convey a draft
of such documents to Plaintiffs' counsel within fourteen
(14) days of the date of this agreement.

7. In the event of a dispute between the parties as to any
terms of the *definitive settlement documents*, the parties
agree that [the judge *pro tempore*] shall be final arbiter of
any such disputes and there shall be no right to appeal of
any such decision by [the judge *pro tempore*].

(Emphasis added.)

¶4      For months after the conference, the parties discussed terms
for a final operative settlement agreement, to no avail. *Barrett I*, 1 CA-CV
22-0435 at *1, ¶¶ 4-5. Despite their inability to reach a final agreement, the
Barretts failed to appear at a trial-setting conference, leading the superior
court to place the 2019 case on the dismissal calendar "to be 'thereafter

dismissed, without further notice, unless prior to [a set] date the parties take affirmative action.'" *Id.* at ¶ 4-6. The Barretts did not take the requisite affirmative action within the prescribed period. *Id.* at ¶ 7.

¶5        Later, the Barretts filed a motion asking the superior court to "reinstate this case for the purpose of considering" their motion to compel arbitration.[2] The Barretts posited that the appointed judge *pro tempore* should act as arbiter to "resolve the differences" over the terms of a final operative settlement agreement. The superior court denied the motion with prejudice, for two reasons. First, the court held that the Barretts must file a separate suit to seek enforcement of the parties' agreement. Second, the court held that the mediation agreement was not, in fact, an enforceable agreement, but merely "an agreement in principle."

¶6        The Barretts moved for reconsideration, asking the superior court to "re-issue" its ruling, deleting the alternative holding that the mediation settlement agreement is not enforceable. While the parties may not have "agreed to every possible detail," the Barretts argued, they "clearly manifested an intent to be bound" by the mediation settlement agreement, and so it is binding and enforceable. The court's holding to the contrary was dicta, they asserted, and should be deleted to avoid "creat[ing] problems for the record going forward." The court denied the Barretts' motion.

¶7        The superior court then entered a signed final judgment dismissing the 2019 case. *Id.* at *2, ¶ 9. Upon entry of this final judgment, the Barretts timely appealed the court's dismissal of their case and "all" its other rulings. *Id.* at *2, ¶¶ 9-10. This court upheld the dismissal, concluding that because the Barretts failed to diligently pursue the matter, the superior court did not abuse its discretion by denying their motion to reinstate the 2019 case. *Id.* at *4, ¶¶ 23-24. In so holding, this court expressly declined to address the Barretts' argument that the mediation settlement agreement "is binding and enforceable," noting that resolution of that issue "does not affect whether the superior court abused its discretion by denying the motion to reinstate the case." *Id.* at *4, ¶ 25.

¶8        The Barretts then filed a complaint to compel arbitration against the Defendants in Maricopa County Superior Court Case No. CV2022-007755 (the "2022 case"). Consistent with their motion for

---

[2]      The record does not indicate that the superior court had actually dismissed the 2019 case when the Barretts moved to "reinstate" it.

reconsideration in the 2019 case, the Barretts argued that the mediation settlement agreement "is an enforceable arbitration agreement" and characterized as dicta the superior court's finding that the agreement was not enforceable. The Barretts asserted that, to the extent the mediation settlement agreement omits necessary terms, such defects did not preclude enforceability and could "be resolved" during arbitration.

**¶9** The Defendants moved to dismiss the complaint, arguing that "the doctrines of issue and/or claim preclusion" barred the arbitration action. To support their contention, the Defendants pointed to the superior court's ruling denying the Barretts' motion to compel arbitration with prejudice in the 2019 case, noting that the court essentially found the mediation settlement agreement "was nothing more than an unenforceable agreement to agree."

**¶10** After full briefing, the superior court summarily "concur[red]" with [the] Defendants' rationale" and dismissed the complaint. Upon the court's entry of a final judgment, the Barretts timely appealed. We have jurisdiction over this appeal under Article 6, Section 9, of the Arizona Constitution, and A.R.S. §§ 12-120.21 and -2101(A)(1).

## DISCUSSION

**¶11** The Barretts challenge the superior court's dismissal of their complaint to compel arbitration. First, they contend that issue preclusion does not bar their action to compel arbitration because the superior court's enforceability and arbitrability findings in the 2019 case were unnecessary to its dismissal ruling. Second, they argue that the mediation settlement agreement is an enforceable agreement subject to arbitration.

**¶12** We review *de novo* the dismissal of a complaint. *See Coleman v. City of Mesa*, 230 Ariz. 352, 355, ¶ 7 (2012). We also review *de novo* the preclusive effect of a prior judgment. *Howell v. Hodap*, 221 Ariz. 543, 546, ¶ 17 (App. 2009). In doing so, we will affirm the superior court's ruling if "correct for any reason." *Glaze v. Marcus*, 151 Ariz. 538, 540 (App. 1986).

**¶13** To promote judicial economy, prevent vexatious litigation, and encourage reliance on adjudication, the doctrine of issue preclusion bars parties "from relitigating issues of fact or law." *Legacy Found. Action Fund v. Citizens Clean Elections Comm'n*, 254 Ariz. 485, 492, ¶ 24 (2023); *Ferris v. Hawkins*, 135 Ariz. 329, 331 (App. 1983) (quotation and citation omitted). While issue preclusion may be invoked even when a second action is not based upon the same claim as the first action, it only applies if "the issue or fact to be litigated was actually litigated in a previous suit [or proceeding],

a final judgment was entered, and the party against whom the doctrine is to be invoked had a full opportunity to litigate the matter and actually did litigate it, provided such issue or fact was essential to the prior judgment." *Kopp v. Physician Group of Ariz., Inc.*, 244 Ariz. 439, 442, ¶ 14 (2018) (citations and emphasis omitted).

**¶14**		Applying this framework, the Barretts do not dispute that: (1) they moved to compel arbitration against the Defendants in the 2019 case, (2) the superior court denied their motion to compel with prejudice as part of its final judgment dismissing the 2019 case, and (3) they litigated in superior court the enforceability and arbitrability of the mediation settlement agreement, both in their motion to compel and their motion to reconsider. *See Chaney Bldg. Co. v. City of Tucson*, 148 Ariz. 571, 573 (1986) ("When an issue is properly raised by the pleadings or otherwise, and is submitted for determination, and is determined, the issue is actually litigated.") (citation omitted). But the Barretts assert that the superior court's ruling on their motion to compel "was *dicta*, and therefore not 'essential'" to its dismissal judgment.

**¶15**		Specifically, the Barretts contend that in the 2019 case, the superior court needed only to find that their case had been dismissed and they had *failed to demonstrate grounds to reinstate it*, "without the necessity of any reference" to the enforceability or arbitrability of the mediation settlement agreement.

**¶16**		The superior court's dismissal judgment states in relevant part:

> Notwithstanding that it may be cost-efficient, [the Barretts] present no valid grounds for the Court to order [the judge *pro tempore*] to proceed outside of the Parties' binding agreement on his [] remaining charge ("final arbiter" of disputes "as to any terms of the definitive settlement documents,". . .) to instead require him to arbitrate "any issues on implementation."

> . . .

> In [email correspondence], [the Barretts'] counsel states: "If there is a necessity to sue to enforce the arbitration agreement that will be a separate lawsuit." And in their [subsequent filing], Plaintiffs' counsel, through staff, again admits Plaintiffs' contemplation of a new, separate lawsuit. . . . *The*

*applicable authorities require the Court to leave [the Barretts] to that remedy.*

(Emphasis in original). According to the Barretts, the final sentence in this section of the decision negates any preclusive effect from the court's enforceability and arbitrability determinations.

**¶17** "Statements and comments . . . concerning some rule of law or legal proposition not necessarily involved nor essential to [the] determination of the case in hand are obiter dicta, and lack the force of an adjudication." *Barrows v. Garvey*, 67 Ariz. 202, 206 (1948) (citation omitted). Here, the superior court found that the Barretts failed to demonstrate grounds for relief (reinstatement) under Arizona Rule of Civil Procedure 60(b)(1) or (b)(6) – having adduced no evidence of mistake, inadvertence, surprise, or neglect that excused their failure to diligently prosecute the case - and denied their motion to reinstate accordingly. As part of its dismissal ruling, the court also determined that the Barretts would not prevail on their motion to compel arbitration in any event because the mediation settlement agreement is neither enforceable nor subject to arbitration, but these findings were not integral to its denial of the motion to reinstate the case. *See Barrett I*, 1 CA-CV 22-0435, at *4, ¶ 25 (explaining appellate court "need not consider" the Barretts' argument that the mediation settlement agreement is binding and enforceable "because it does not affect whether the superior court abused its discretion by denying the motion to reinstate the case"). Because the court's enforceability and arbitrability determinations in the 2019 case were unnecessary to the reinstatement ruling, and therefore extraneous to the dismissal judgment, the doctrine of issue preclusion did not bar the Barretts from pursuing their claim concerning the arbitrability of the mediation settlement agreement in the 2022 case.

**¶18** Having found no procedural bar, we consider whether the superior court nonetheless properly dismissed the Barretts' complaint to compel arbitration in the 2022 case. To resolve this issue, we must construe the language of the mediation settlement agreement.

**¶19** "The purpose of contract interpretation is to determine the parties' intent and enforce that intent." *Grosvenor Holdings, L.C. v. Figueroa*, 222 Ariz. 588, 593, ¶ 9 (App. 2009). To do so, "we first consider the plain meaning of the words in the context of the contract as a whole." *Id.* (citation omitted). If the text is unambiguous, we apply the language as written. *Id.* The parties' disagreement about the meaning of the language does not, by

itself, constitute an ambiguity. *United Cal. Bank v. Prudential Ins. Co.*, 140 Ariz. 238, 258 (App. 1983).

¶20 Guided by these principles, we look to the relevant contractual language. At Term No. 7, the mediation settlement agreement states that "[i]n the event of a dispute between the parties as to any terms of the *definitive settlement documents*, the parties agree that [the judge *pro tempore*] shall be final arbiter of any such disputes and there shall be no right to appeal of any such decision by [the judge *pro tempore*]." (Emphasis added.) According to the Barretts, this arbitration provision compels the Defendants to submit the parties' inability to reach a final settlement agreement to the appointed arbiter, who would then decide any unagreed upon terms. But given a plain reading, the arbitration provision takes effect only *after* the parties execute "definitive settlement documents." The mediation settlement agreement contemplates further agreement and does not, as the Barretts contend, empower the arbiter to determine the terms of a final definitive settlement agreement in the first instance. Therefore, the superior court properly dismissed the Barretts' complaint to compel arbitration.

¶21 We express no opinion, however, on whether the mediation settlement agreement is by itself a valid, binding agreement. A settlement agreement may constitute a binding contract even if it is not reduced to a detailed writing that leaves no issue for future resolution. *See Althaus v. Cornelio*, 203 Ariz. 597, 601, ¶ 17 (App. 2002) ("The standard for contract enforceability is not whether the agreement included a resolution of every matter and anticipated every contingency.") (citation omitted); *AROK Constr. Co. v. Indian Constr. Services*, 174 Ariz. 291, 297 (App. 1993) ("[A]bsent or uncertain terms are not fatal to the enforceability of an otherwise binding contract."). Because the Barretts sought only to compel arbitration in the 2022 case, we need not decide whether they could assert a cognizable claim for breach of the mediation settlement agreement, or a claim for its specific enforcement, and nothing in this decision or in the 2019 decision precludes such claims. *See Progressive Specialty Ins. Co. v. Farmers Ins. Co. of Ariz.*, 143 Ariz. 547, 548 (App. 1985) (explaining appellate courts should not decide questions unnecessary to the disposition of the appeal).

**CONCLUSION**

¶22 For the foregoing reasons, we affirm the court's ruling denying a request to compel mediation, without prejudice to the Barrett's pursing a contract claim relating to the mediation settlement agreement. Both parties request an award of their attorneys' fees and costs on appeal

under A.R.S. § 12-341.01, which authorizes an award of attorneys' fees to the successful party in any contested action arising out of a contract. In our discretion, we deny both parties' requests. As the prevailing party, we award the Defendants their reasonable attorneys' fees and taxable costs upon compliance with ARCAP 21.



AMY M. WOOD • Clerk of the Court
FILED:   AGFV